UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MIGUEL A. FLORES-LINARES,

               Petitioner,                    **MEMORANDUM**

     v.                                    **AND ORDER**
                                        26-CV-00298-SJB

PAM BONDI, et al.,

               Respondents.
-------------------------------------------------------X
**BULSARA, United States District Judge:**

       Petitioner Miguel A. Flores-Linares ("Petitioner")—who has lived in the United States since 2003—was arrested by Immigration and Customs Enforcement ("ICE") on January 16, 2026, and by the Respondents' admission was held here in Nassau County until 6:30 p.m. on January 17, 2026.  (Resp'ts' Letter dated Jan. 20, 2026 ("Resp'ts' Jan. 20 Letter"), Dkt. No. 5 at 1–2).  At that time, he was secretly transferred out of the ICE facility in Nassau County to another ICE facility in New Jersey.  (*Id.* at 2).  According to Respondents, Petitioner was booked into the New Jersey facility at "approximately 9:15 p.m."  (*Id.*; *see also* Decl. of Deportation Officer Kareem Johnson ("Johnson Decl."), attached to Resp'ts' Jan. 20 Letter, Dkt. No. 5-1 ¶ 7).  Petitioner's counsel filed the present habeas petition at 9:24 p.m.  (Resp'ts' Jan. 20 Letter at 2; Pet. for Writ of Habeas Corpus dated Jan. 17, 2026, Dkt. No. 1).  On the basis of this nine-minute difference, Respondents contend that venue is improper here, and the Petition must be transferred to the District of New Jersey.  (*See* Resp'ts' Jan. 20 Letter at 2–3).  Yet at the same time, Respondents cannot explain to the Court when a member of the public, a family member, or counsel could have become aware of the Petitioner's move to New Jersey.

(*See* Resp'ts' Letter dated Jan. 21, 2026 ("Resp'ts' Jan. 21 Letter"), Dkt. No. 8 at 1). Indeed, the only time that this Court (and Petitioner's counsel) was made aware of Petitioner's location was after Respondents were ordered to respond to a Court order—some four days after the Petitioner was arrested.  Up until that point, including on the day the Petition was filed, based on a phone call with her client, counsel believed Petitioner was in the Eastern District of New York.  (Pet'r's Letter dated Jan. 20, 2026 ("Pet'r's Letter"), Dkt. No. 6 at 1).[1]

Respondents treat venue like a game of whack-a-mole, but one where they control all the information about the targets; should a petitioner seek relief in a jurisdiction where his counsel reasonably believes he is being held, and if ICE later discloses that he was in fact moved to and is in a different location, a court must transfer the petition.  That, of course, wastes time, leads to prolonged detention—and in some cases, like the present one, illegal detention, given that Respondents freely admit they have no legal basis for the actual detention—and is contrary to any rational sense of governance, law, or court administration.  But, it also happens to make hash of the habeas venue rules, which although hardly pellucid on this point, do not contemplate such a result.  For the reasons explained, the Court denies the request to transfer and directs that Respondents release Petitioner no later than **January 23, 2026 at 5:00 p.m.**, and file proof of compliance with the Court's Order.

---

[1] Counsel learned that Petitioner was in New Jersey when she checked ICE's online locator on January 20, 2026.  (Pet'r's Letter at 1).

There are "two traditional requirements for a federal court to entertain a habeas petition: that the petition be filed in the district of confinement and that it name the petitioner's immediate custodian." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025). "The Supreme Court has made clear the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 391 (quotation omitted). "[C]omplexities can be introduced by the Government's transfer of a detainee to another district." *Tacuri ex rel. Guanoluisa v. Francis*, No. 25-CV-7012, 2025 WL 3459377, at *2 (S.D.N.Y. Dec. 2, 2025).

Here, counsel filed her client's petition in the district she believed he was confined. (*See* Pet'r's Letter at 1.) And Respondents do not contest that on the day in question, January 17, Petitioner was in the Eastern District of New York. Petitioner's counsel confirmed this in a phone call with her client the day before. (*Id.*).

ICE maintains a database, the ICE Online Detainee Locator System, where it logs the location of a detained individual—ostensibly for the purpose of permitting a family member or counsel to locate a person. Petitioner was arrested on January 16th. But on that day, or the following day, January 17, Petitioner's location was not in the Detainee Locator System. On January 17th, counsel attempted to confirm Petitioner's location in the database, but that was a futile exercise—he was not there, no matter what permutation of his name was used.[2] (*Id.*).

_____

[2] Petitioner's counsel recounts that her attempts to enter Petitioner's biographical information (in various iterations) into the Detainee Locator resulted in "zero matching records." (Pet'r's Letter at 1 n.1).

When did Petitioner appear in the Locator System for the first time? Respondents cannot tell the Court, even when ordered to do so. (*See* Resp'ts' Jan. 21 Letter). Did the database reflect Petitioner's change in location from New York to New Jersey in the late hours of January 17th? Again, Respondents cannot say. The only evidence in this record is from Petitioner's counsel: on January 17th there was no information in the database about her client's location. The only information she had was from the Petitioner himself, who called from the Nassau County ICE facility in the late afternoon on the day before.

Respondents bullishly assert that at the precise moment the Petition was filed, because Petitioner was not confined in this District, venue is improper here. That position is legally untenable.

There is no doubt that venue is proper only in a single district: the district of confinement. *See Ozturk*, 136 F.4th at 391; *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). That proposition leads to a set of subsidiary questions: (1) when is the district of confinement determined and (2) does venue "attach" to the last known district of confinement, if there is no available information to the contrary? Neither question was squarely posed or decided by the Second Circuit's decision in *Ozturk*.

As to the first question—when the district of confinement is determined—the only guidance the Supreme Court or the Second Circuit have provided is that the appropriate district is where the petitioner is present at the time of filing. *See Padilla*, 542 U.S. at 443 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in [the district of confinement].")"; *Ozturk*, 136 F.4th at 393 (looking to the

propriety of the petition for purposes of jurisdiction "at the time of filing"). But is that determined on the day the petition is filed? Does it compare the exact time of filing on the court's electronic docketing system, down to the minute, to the petitioner's location at that exact moment? In other words, is the petitioner's presence to be determined at the granular level of hours and minutes in order to determine venue?

Respondents would have the determination be based on a minute-by-minute, second-by-second evaluation. And, as a consequence, the moment a petitioner passes the boundary from one district to a second, the first district loses venue and the second gains it. This makes little sense. "With very limited exceptions . . . common law legal systems have long reckoned periods of legal significance by the calendar, not by the clock." *Lagandaon v. Ashcroft*, 383 F.3d 983, 990–91 (9th Cir. 2004); *see also* 2 William Blackstone, Commentaries on the Laws of England 141 (1769) ("In the space of a day all the twenty four hours are usually reckoned; the law generally rejecting all fractions of a day, in order to avoid disputes."); *Freeman v. Pew*, 59 F.2d 1037, 1037 (D.C. Cir. 1932) ("[It] has long been the settled doctrine that the law, disregarding fractions, takes the entire day as the unit of time."). The Federal Rules of Civil Procedure do not operate as Respondents would have it: for example, deadlines and periods of time are measured in days, not their microdivisions. *Cf.* Fed. R. Civ. P. 6. The Federal Rules are not a random analogy in this context: they apply to habeas petitions unless in conflict with the habeas statute. *See* Rules Governing Section 2254 Cases, Rule 12 ("Applicability of the Federal Rules of Civil Procedure."); *see also* Fed. R. Civ. P. 81(a)(4)(A). The default rule in federal practice is that days—not hours or minutes—take on importance. *Duarte-Ceri v.*

*Holder*, 630 F.3d 83, 88 (2d Cir. 2010) (noting "the general doctrine that the law does not allow of fractions of a day" (quotation omitted)).  For example, "to avoid calculating precise times that the law pressed into wide use the span of time called 'a year and a day.'"  *Lagandaon*, 383 F.3d at 991.

In the immigration context, subdivisions of a day—hours and minutes—should be utilized by a court only when they favor a petitioner.  *Duarte-Ceri*, 630 F.3d at 89.  And the habeas statute operates by references to days, not minutes or hours.  *E.g.*, 28 U.S.C. § 2263(a) (allocating "180 days" for § 2254 petitions in capital cases).  To do otherwise runs counter to its purpose.  *Cf. Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 350 (1973) (noting it is appropriate to reject "interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements").  The point of all this is that on the date the Petition was filed—January 17, 2026— Petitioner was, without dispute, confined in the Eastern District of New York.  That he spent a fraction of the day confined elsewhere does not vitiate venue: situs of habeas challenges should not turn on a nine-minute increment, nor do they.  *Cf. Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Lab. Rels. Auth.*, 802 F.2d 47, 48 (2d Cir. 1986) ("Indeed, it would offend our notions of both justice and common sense to hold that the actual amount of time available to petition for review was open to the vagaries of when during the day the authority issued its order.  Therefore, unless we were to require that the period extended to the corresponding hour and minute of the next day-which undoubtedly would draw us into a morass of picayune challenges[.]").

*Ozturk* does not compel a contrary result.  To be sure, in that case, the Court of Appeals had precise times when the petitioner was moved from Massachusetts to Vermont.  *Ozturk*, 136 F.4th at 390–91.  And so, the Court of Appeals was able to decide the question presented there: whether the district court erred in transferring the petition from one district to another.  *Id.* at 390–92.

*Ozturk* resolved the propriety of the transfer of the case between two jurisdictions and did not purport to answer all questions about the meaning of a district of confinement.  *Id.* at 391 ("Accordingly, the Massachusetts district court found it lacked habeas jurisdiction and transferred the petition to Vermont under 28 U.S.C. § 1631.  The government now argues that this transfer was improper.  The government is wrong." (citation omitted)).[3]  Nothing about its blessing the transfer created a rule that venue is lost at the exact moment of a Petitioner's district border-crossing.  Nor did it explicitly address the appropriate venue when a person is in transit at the time of filing.  *See, e.g., Tacuri*, 2025 WL 3459377, at *4 (declining to transfer venue when at the time of filing petitioner was "neither here, nor there, but in the air").  Respondents' reading of *Ozturk* would have lawyers monitor with the precision of an atomic clock the

---

[3] In that inquiry, the Court of Appeals examined whether transfer was inappropriate under 28 U.S.C. § 1631, and concluded it was not.  Respondents now rely on the case and statute to argue that transfer is *required*.  But the statute does not require transfer.  *See Sorcia v. Holder,* 643 F.3d 117, 122 (4th Cir. 2011) ("We hold that § 1631, which speaks exclusively of jurisdiction, does not mandate transfer where venue is lacking.").  It might require dismissal if venue is not appropriate, and transfer does not occur, *see Ozturk*, 136 F.4th at 391 n.1, but the Respondents did not seek dismissal.  In any event, venue is appropriate here because it is determined on the date of confinement, and the Respondents' evidence about the timing of Petitioner's presence elsewhere is unreliable.

exact location of a detainee, to the hour and minute, to determine in which district a habeas petition should be filed. Yet the information ICE provides publicly about a detainee is nowhere so exacting—it is quite the opposite. Respondents would have the parties and lawyers scrambling to determine to the minute when a person crossed the Brooklyn Bridge so as to move from the Southern to the Eastern District, or in this case, crossed over the Lincoln Tunnel to end up in New Jersey. Devolving custody to a minute-by-minute exacting inquiry countermands the understanding that a court is to interpret habeas requirements functionally, "rather than by the blind incantation of words with implied magical properties." *Eisel v. Sec'y of the Army*, 477 F.2d 1251, 1254 (D.C. Cir. 1973).

As to the second question—whether venue "attaches" to the last known district of confinement, if there is no available information to the contrary—the answer lies in the analogous situation of the "unknown custodian." *See Ozturk*, 136 F.4th at 392–93. Where a custodian is unknown, a petitioner is permitted to rely on the reasonable information available and sue the ascertainable respondent, even if it later turns out to be erroneous. *Id.* at 392 ("[I]n cases where the petitioner is held in an undisclosed location by an unknown custodian . . . the naming of a more remote custodian . . . satisfies statutory requirements." (quotations omitted)).

Here there is essentially an "unknown" district of confinement. And there is no reason why a petitioner should not be able to proceed in the same manner as against an unknown custodian—rely on the information available about the location of the petitioner on the *day* the petition is being filed. "[I]f the government moves a detainee

8

from a district and their attorney cannot discover their location with reasonable inquiry, that attorney must be able to file a habeas petition in the detainee's last-known location against their ultimate custodian." *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *6 (4th Cir. July 1, 2025). If the Petitioner was in New Jersey at precisely 9:15 p.m. on January 17th, anyone "seeking to act on Petitioner's behalf could [not] have known that at the time of filing." *Tacuri*, 2025 WL 3459377, at *4. And in such a situation, the last known district of confinement—on the day in question—is an appropriate place to file a habeas petition. Here, "[j]urisdiction is therefore proper in [petitioner's] last-known location, and the only place his attorney reasonably could have filed a petition," based on all the information known at the time: the Eastern District of New York. *Suri*, 2025 WL 1806692, at *6.

There is a separate and independent problem here: Respondents treat 9:15 p.m., the time when Petitioner was allegedly detained in New Jersey, with an exactitude that it does not warrant. The affidavit Respondents submit—a hearsay statement based not upon personal knowledge, but on information gathered from unidentified sources and persons, (Johnson Decl. ¶¶ 1–2)[4]—says "approximately" 9:15 p.m., (*id.* ¶ 7). If we are going to use the Respondents' venue interpretation, then the exact minute matters. There is no room for "approximately." If the approximation is based upon quarters of an hour, and there is some reasonable possibility that Petitioner was not in New Jersey until 9:30 p.m., then the venue question has a different answer. (The Court's Electronic

---

[4] "The following representations are based on my review of Petitioner's administrative records, consultation with my colleagues, and ICE electronic records and databases." (Johnson Decl. ¶ 2).

Case Filing ("ECF") system, in contrast, records the exact minute Petitioner's counsel filed, so there can be no real dispute that it was at 9:24 p.m.). But there is more. Respondents provide no indication of what they mean when they say Petitioner was "booked" at "approximately 9:15 p.m." Was he confined in the New Jersey facility at the time? Was information about his arrival sent forward in anticipation of his estimated arrival, given that he had been previously processed and was already in ICE custody? Respondents' declaration—short on words, and devoid of detail—actually fails to say that Petitioner *arrived* at the New Jersey ICE detention facility at "approximately 9:15 p.m." That is plainly the inference Respondents expect the Court to draw. And the Court is reticent to resolve the issue of jurisdiction based off a single declaration, riddled with hearsay, that could easily be false. It would not be the first time ICE officials have misrepresented booking times in declarations before this District for purposes of litigation advantage. *See Clarke v. U.S. Dep't of Homeland Sec'y*, No. 25-CV-6773, 2025 WL 3674471, at *4 (E.D.N.Y. Dec. 18, 2025) ("In addition to being rank hearsay, the information presented in the Diaz Declaration proves evasive and demonstrably false.").

Perhaps some omniscient force can give the Court detailed information about the precise minute Petitioner was confined in New Jersey and do so in a reliable, trustworthy fashion. But as its "approximat[ion]" and lack of timely updates on its locator demonstrate, ICE is not it. "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of

justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969).[5]

Because the Court finds that Petitioner's counsel acted on the only reasonable information available—that on the day the Petition was filed, Petitioner was in this District—and given the unreliability and vagueness of the information relied on by Respondents that he was in New Jersey, the Court finds venue in this District is proper. "Only in an exceptional case may a court deviate . . . to hear a habeas petition filed against some person other than the immediate custodian of the prisoner, or in some court other than the one in whose territory the custodian may be found." *Padilla*, 542 U.S. at 454 (Kennedy, J. concurring). This case—with no public information about the Petitioner's relocation to New Jersey, and Respondents' inability to identify when the Petitioner's new location was disclosed—is such a case. *Cf. id.* ("In this case, if the Government had removed Padilla from the Southern District of New York but refused to tell his lawyer where he had been taken, the District Court would have had jurisdiction over the petition. Or, if the Government did inform the lawyer where a prisoner was being taken but kept moving him so a filing could not catch up to the

---

[5] The district-of-confinement rule is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction," *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011) (quotation omitted), but akin to venue, *see Khalil v. Joyce*, 771 F. Supp. 3d 268, 287 (S.D.N.Y. 2025). In other words, Respondents could waive a venue objection. *See, e.g.*, Order, *Salas v. U.S. ICE*, No. 25-CV-10719 (S.D.N.Y. Dec. 30, 2025). Instead, they have chosen to rely on a nine-minute difference to argue for transfer. All of this suggests an attempt to forum shop.

prisoner, again, in my view, habeas jurisdiction would lie in the district or districts from which he had been removed.").[6]  The request to transfer is denied.

And the writ is granted.  The Government has filed an opposition to Petitioner's writ that suggests that the sole basis for Petitioner's detention is 8 U.S.C. § 1225, despite the fact that Petitioner has been in the United States since April 2003.  (*See* Pet. ¶ 1).  The Government's position is that someone is subject to removal and detention under Section 1225(b)(2), as someone who is "seeking admission" to the United States, notwithstanding that they have been living here for months, if not years.  Court after court, judge after judge, in district after district has rejected this argument.[7]  *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 490–91 (S.D.N.Y. 2025) ("[T]he line historically drawn between sections 1225 and 1226, which mak[es] sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens seeking admission into the country, whereas section 1226 governs detention of non-citizens already in the country. . . . This Court has similarly been unable to identify any authority to support Respondents' expansive interpretation of § 1225(b)." (quotations omitted)); *Padilla Molina v. DeLeon*, No. 25-CV-06526, 2025 WL 3718728, at *3 (E.D.N.Y.

---

[6] Respondents contend that this case is akin to *Khalil*, where Judge Furman transferred the petition, and declined to apply the venue exceptions articulated in Justice Kennedy's *Padilla* concurring opinion.  It is not.  In *Khalil*, the ICE detainee locator was updated within a matter of hours, in the middle of the night, when no judicial relief could have been granted.  771 F. Supp. at 285.  Here, Respondents cannot even identify when Petitioner was named in the online locator or when it was updated to reflect the New Jersey relocation.  And the only evidence—from Petitioner's counsel no-less—was that it was on January 20, days after the relocation.  *Supra* n.1.

[7] The Court also sees no basis for detention under Section 1225(b)(1), which Respondents do not cite or rely on.

Dec. 23, 2025) ("This Court agrees with Petitioner that he is detained subject to Section 1226, not Section 1225. In so holding, the Court joins the hundreds of district court decisions that have rejected Respondents' expansive interpretation of Section 1225 as inconsistent with the plain text and overall structure of the INA.") (collecting cases); *Ulloa Montoya v. Bondi*, No. 25-CV-6363, 2025 WL 3718694, at *3 (E.D.N.Y. Dec. 23, 2025) (same); *Rodriguez-Acurio v. Almodovar*, -- F. Supp. 3d --, No. 25-CV-6065, 2025 WL 3314420, at *23 (E.D.N.Y. Nov. 28, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." (quoting *Barco Mercado v. Francis*, -- F. Supp. 3d --, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025))).

Respondents concede that before this Court they have no new arguments to present to warrant the detention of this Petitioner, except the recycled arguments that hundreds of decisions and judges have rejected over and over again, and as such "cannot prevail in this action." (Resp'ts' Jan. 20 Letter at 4). In contrast to this tidal wave of cases, they offer only three or four isolated decisions going the other direction and note that the Court of Appeals is considering a handful of decisions, (*id*. at 4 n.4, n.6), but otherwise submit that the Court can decide this matter without further briefing, (*id*. at 4).

13

The Court incorporates the reasoning of judges in this District and its sister courts and grants the writ—because at its core, detention under § 1225 violates due process guarantees and is inapplicable and inappropriate for individuals who have lived in the United States as long as Petitioner has.  Respondents are directed to effectuate Petitioner's release by **January 23, 2026 at 5:00 p.m.** and file a letter on the docket confirming Petitioner's release by that time.  Respondents are enjoined from detaining or removing Petitioner absent further direction from this Court.  The Court concludes that the Petition's other bases for granting the writ, including the APA, are now moot and unnecessary to resolve.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  January 22, 2026
        Central Islip, New York

14